UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TIFANIE DEE ANN McDOWELL, )<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL S. ASTRUE, )<br>Commissioner of Social Security, )<br>   Defendant. ) | Case No: 1:12-CV-82<br>Mattice/Carter |

REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 14) and Defendant's Motion for Summary Judgment (Doc. 16).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

Plaintiff's Age, Education, and Past Work Experience

Plaintiff was 30 years old on the date of the ALJ's decision (Tr. 104, 111). She has a high school education, having completed one year of college, and has past relevant work experience as a cashier, a hotel desk clerk, a housekeeper, and a baby sitter (Tr. 18-19, Findings 6 & 8, Tr. 35, 131, 133-43, 157-64).

1

Applications for Benefits

Plaintiff applied for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) on September 21, 2010, alleging disability from December 7, 2009, due to agoraphobia, major depression, and anxiety/panic disorder (Tr. 104-10, 111-12, 125). After a hearing on October 20, 2011 (Tr. 25-38), an administrative law judge (ALJ) issued a decision on November 10, 2011, denying Plaintiff's applications (Tr. 9-24). On February 2, 2011, the AC denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-7). Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. §§ 405(g), 1383 (c)(3).

Standard of Review - Findings of the ALJ

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); Abbot v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. Id. If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; Skinner v. Secretary of Health & Human Servs., 902 F.2d 447, 449-50

(6th Cir. 1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. Richardson v. Secretary, Health and Human Servs., 735 F.2d 962, 964 (6th Cir. 1984); Noe v. Weinberger, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 28 L. Ed. 2d 842, 92 S. Ct. 1420 (1971); Landsaw v. Secretary, Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994) (citing Mullen v. Bowen, 800 F.2d 535, 548 (6th Cir. 1986)); Crisp v. Secretary, Health and Human Servs., 790 F.2d 450 n. 4 (6th Cir. 1986).

After considering the entire record, the ALJ made the following findings:

1. Claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. Claimant has not engaged in substantial gainful activity since December 7, 2009, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*).

3. The claimant has the following severe impairments: depression and panic disorder with agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4.  Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant would be limited to performing simple routine and repetitive tasks in a low stress work environment. She could interact with the general public occasionally. She could not perform jobs requiring the operation of motor vehicles or exposure to hazardous equipment and unprotected heights. Claimant could tolerate no more than occasional changes in job duties.

6.  Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  Claimant was born on February 26, 1981 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. Claimant has not been under a disability, as defined in the Social Security Act, from December 7, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-20).

## Issue Presented

Plaintiff contends:

I.  The ALJ erred by failing to provide rationale for rejecting the medical source opinion rendered by Plaintiff's treating mental health nurse practitioner Lori Firestone, N.P.

4

II. The ALJ's residual functional capacity finding does not comport with the limitations assigned concerning Plaintiff's inability to work with the general public.

Relevant Facts

Plaintiff has had psychiatric treatment since at least June 1997, when she was admitted to the partial program of Valley Psychiatric because of severe depression, separation anxiety and school phobia (Tr. 230–36). She received outpatient treatment subsequently under the care of psychiatrist Vijaya Appareddy, M.D. (Tr. 237–40).

On October 25, 2006, over three years prior to the present alleged onset date, Plaintiff underwent a psychological consultative examination as part of a prior disability application. Results of the evaluation revealed diagnoses of panic disorder with agoraphobia and major depressive disorder, recurrent, severe without psychotic features. A Global Assessment of Functioning ("GAF score") rating was given of 50 (Tr. 388). According to the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), a GAF score between 41 and 50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsession rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Regarding Plaintiff's functioning, examiner Benjamin Biller, M.S. opined that her ability to understand and remember simple and/or detailed instructions appeared to be mildly affected due to depression and anxiety. Her ability to sustain concentration and be persistent with work processes appeared to be moderately affected due to depression and anxiety and her ability to interact with peers and supervisors in a standardized work setting appeared to be severely affected due to depression and anxiety. Her ability to adapt to changes in the work environment and to be aware of hazards and travel unaccompanied in unfamiliar places or use public transportation

5

appeared to be minimally affected due to depression and anxiety (Tr. 388).

On November 29, 2007, Plaintiff presented to Cleveland Behavioral Health Associates ("CBH") requesting therapy and reporting having been out of medications for one month. (Tr. 417). The initial diagnosis was major depression, recurrent, severe without psychotic features. A GAF score of 50 was assigned (Tr.416). The record contains no CBH records during 2008 and 2009. On March 11, 2010, Plaintiff presented with improved mood but difficulty sleeping, symptoms of anxiety with symptoms including tachycardia, feeling overwhelmed, sweating, and fear of losing control. "Cluster B traits" was added to her Axis II diagnosis, in addition to a diagnosis of panic disorder with agoraphobia (Tr. 412–14). Subsequent treatment notes in 2010 showed Plaintiff presented with dysphoric mood and tearful affect after she went to jail and her truck was seized (Tr. 409–11). In December of 2010, Plaintiff also reported dysphoric mood, ongoing racing thoughts, fluctuating sleep and "difficulty getting out of her room."(Tr. 427). On February 24, 2011 Plaintiff reported sleep improved, appetite improved and overall improvement of mood. Records from CBH of an April 21, 2011 visit, continue to reflect that Plaintiff had difficulty leaving her house. (Tr. 476–80, 484–86).

In a "Medical Source Statement (Mental)" completed August 18, 2011, Lori Firestone, N.P., Plaintiff's psychiatric mental health nurse practitioner, opined that Plaintiff would not be expected to be reliable in attending fulltime work without missing more than two days per month. Her comment regarding that assessment was "Patient has not worked since 2004." She further found that Plaintiff would have "poor" abilities (i.e., ability in the area is "usually precluded") in the following areas: (1) capacity to interact appropriately, communicate effectively and engage in other aspects of social functioning; (2) ability to adapt to stressful circumstances in work-like settings where failure to adapt results in increase in symptoms; (3) ability to behave in an

emotionally stable manner; (4) ability to relate predictably in social situations; (5) ability to deal with the public; (6) ability to maintain personal appearance; (7) ability to deal with the stress of ordinary work; (8) ability to demonstrate reliability; and (9) the ability to relate to supervisors and co-workers. She assessed a fair ability to (1) perform activities of daily living independently and appropriately, free of supervision or direction; (2) concentrate and maintain persistence and pace; (3) understand, remember and carry out detailed, but not complex, instructions; (4) understand, remember and carry out simple instructions, (5) follow work rules; and (6) use judgment (Tr. 481–83).

Other evidence of record includes a consultative mental examination by Ann M. Ramey, M.S., a senior psychological examiner. During her consultative examination, Plaintiff could recall two of three unrelated words in three to five minutes (Tr. 16, 445). She denied suicidal thoughts, auditory hallucinations, and visual hallucinations (Tr. 445). Plaintiff completed the "serial threes" with one error, and knew all of the four simple mathematical computations using money (Tr. 16; 445). Plaintiff knew the last four presidents, recited six digits in the forward direction and four digits in reverse, and could spell world forward and in reverse (Tr. 445). At the time of the consultative examination, Plaintiff showed orientation to person, place, time, and date (Tr. 445). She showed marginal insight, judgment, and reasoning (Tr. 446). Plaintiff showed cognitive skills in the average range (Tr. 446). Plaintiff also followed directions without difficulty (Tr. 446). Ms. Ramey assessed a Global Assessment of Functioning (GAF) score of between 60 and 65, which shows Plaintiff has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions well and maintains some meaningful interpersonal relationships. During this evaluation Plaintiff admitted to leaving the house to pick up a man she met on Facebook, which resulted in her subsequent arrest, although she reported that she did not

7

leave her home. Ms. Ramey assessed that Plaintiff was a questionable witness with regard to all of her presentation. She found Plaintiff's alleged agoraphobia to be questionable because of her going to doctor's appointments, to the store, putting gas in the car and meeting the man from the Facebook encounter. Ms. Ramey assessed Plaintiff not to be a reliable witness on the history given of conflict with the legal system as well as her response regarding the colors of the American flag in light of her history of [attending] high school and two semesters of college. Mood and affect were reported to be appropriate during the office visit, with memory for recent and remote recall to be adequate and cognitive skills in the average range (Tr. 16, 446, 447).

The record also includes the assessment of George T. Davis, Ph.D., the State agency psychological consultant. Dr. Davis opined Plaintiff could understand and remember simple and detailed tasks; could concentrate and attend to the same tasks, despite some difficulty; could interact with coworkers and supervisors despite some difficulty, could do so without substantial limitation; could not relate with the general public appropriately; and could adapt to work-like settings and change with some, but not substantial, difficulty (Tr. 406).

Finally, the record includes a Psychiatric Review Technique form prepared by Rebecca P. Joslin, Ed. D. on January 19, 2011. After a review of the CBH records and the Mental Status Exam, she assessed a mood disorder, not otherwise specified and found there to be insufficient evidence to support any assessment of functional limitation (Tr. 457, 464). She found Plaintiff to be only partially credible and noted the report of depression and anxiety. She noted Plaintiff did not appear to give best effort at the Mental Status Exam, appeared to give vague answers to activities of daily living and was not felt to be a reliable historian. Based on this she was unable to fully assess mental limits due to failure to cooperate (Tr. 454-466).

Analysis

The Assessment of the Nurse Practitioner:

Plaintiff first argues the ALJ did not provide adequate reasons for rejecting the opinion of Lori Firestone, a nurse practitioner (Doc. 15, Plaintiff's Memorandum at 7-8). She notes the ALJ merely stated, "[t]he undersigned assigned proper weight to the opinion of Lori Firestone." (*see* Tr. 17). Plaintiff concedes the requirements for explaining the weight given to the opinion of "other sources" are less than that of an "acceptable medical source," but argues the explanation given by the ALJ failed to satisfy these lesser requirements. She argues the ALJ should explain the weight given to the opinion of "other sources" in such a way that the determination or decision allows a claimant or subsequent reviewer to follow the ALJ's reasoning, citing SSR 06-03p. However, I conclude, taking the decision as a whole, the ALJ considered and rejected Ms. Firestone's unsupported opinion based on other evidence of record to which he gave great weight (Tr. 17, 481-83). Ms. Firestone completed a medical source statement in August 2011 (Tr. 481-83). She opined Plaintiff retained fair ability to perform activities of daily living independently and to sustain concentration, persistence, and pace (Tr. 482). She further opined Plaintiff retained fair ability to understand, remember, and carry out detailed, but non-complex instructions, to understand, remember, and carry out simple instructions, to follow work rules, and to use judgment (Tr. 482-83). She stated Plaintiff retained poor ability to interact appropriately, communicate effectively, and engage in other aspects of social functioning (Tr. 482). She concluded Plaintiff retained poor abilities to adapt to stressful circumstances in work-like settings where failure to adapt results in repeated episodes of deterioration or decompensation which cause patient to withdraw or to experience exacerbation of symptoms (Tr. 482). She opined Plaintiff showed poor abilities to understand, remember, and carry out complex instructions, behave in an

9

emotionally stable manner, and relate predictably in social situations. In six other categories she

found Plaintiff retained a fair ability to perform (Tr. 17, 482, 483).

The ALJ discussed Ms. Firestone's opinion and acknowledged that she was not an

acceptable medical source, but was to be considered "other sources."  He specifically noted her

opinion could be used to show the severity of a claimant's impairments and how they affected the

individual's ability to function, citing SSR 06-03p (Tr. 17).   Accordingly he said he assigned

proper weight to the opinion (Tr. 17).  Ms. Firestone was a nurse practitioner, which is not an

acceptable medical source (Tr. 17).  See 20 C.F.R.§§ 404.1513(a), (d)(1), 416.913(a), (d)(1).

Because Ms. Firestone was not an acceptable medical source, her opinion was not entitled to any

special weight or consideration.  See id.; 20 C.F.R. §§ 404.1527, 416.927.  The Commissioner

argues substantial evidence supports the ALJ's decision to reject Ms. Firestone's opinion and the

ALJ properly accorded Ms. Firestone's opinion little weight because the record does not support

her evaluation.  Citing 20 C.F.R.  §§ 404.1527(c)(3), 416.927(c)(3).  The question remains did the

opinion show what weight was given when it says "proper weight" was assigned.  I concede, it

would have been better if the ALJ had clearly stated he rejected the opinion of Ms. Firestone, but I

conclude he effectively did so on the basis of the balance of his decision.  After mentioning the

opinion of Ms. Firestone, the ALJ immediately turns to his functional capacity assessment, which

included the following assessed non-exertional limitations:

> ….claimant would be limited to performing simple routine and
> repetitive tasks in a low stress work environment.  She could interact
> with the general public occasionally.  She could not perform jobs
> requiring the operation of motor vehicles or exposure to hazardous
> equipment and unprotected heights.  Claimant could tolerate no more
> than occasional changes in job duties.

The ALJ then points to the testimony of the vocational expert, who testified there were jobs

10

Plaintiff could perform with those limitations. The ALJ then noted he assigned great weight to the opinions of State Agency reviewer Dr. George T. Davis and consultative examiner Ann M. Ramey and the testimony of the VE (Tr. 17) Those opinions contradict the opinion of Ms. Firestone. The consultative mental examination of Ann M. Ramey, M.S., a senior psychological examiner, indicates that Plaintiff's mental condition was not as limiting as she claimed or as opined by Ms. Firestone (Tr. 442-53). See 20 C.F.R. §§ 404.1527(c), 416.927(c); Perales, 402 U.S. at 402; Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529-30 (6th Cir. 1997); Cutlip v. Sec'y of Health and Human Svcs., 25 F.3d 284, 287 (6th Cir. 1994); Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993). During her consultative examination, Plaintiff could recall two of three unrelated words in three to five minutes (Tr. 16, 445). She denied suicidal thoughts, auditory hallucinations, and visual hallucinations (Tr. 445). Plaintiff completed the "serial threes" with one error, and knew all of the four simple mathematical computations using money (Tr. 16; 445). Plaintiff knew the last four presidents, recited six digits in the forward direction and four digits in reverse, and could spell world forward and in reverse (Tr. 445). At the time of the consultative examination, Plaintiff showed orientation to person, place, time, and date (Tr. 445). She showed marginal insight, judgment, and reasoning (Tr. 446). Plaintiff showed cognitive skills in the average range (Tr. 446). Plaintiff also followed directions without difficulty (Tr. 446). Ms. Ramey assessed Plaintiff not to be a reliable witness on the history given of conflict with the legal system as well as her response regarding the colors of the American flag in light of her history of [attending] high school and two semesters of college. In the January 4, 2011 report, Plaintiff's specific response to the colors of the American flag were "red, yellow and green." I note that in a Psychological Evaluation of October 25, 2006, conducted as part of a prior disability application, she was able to correctly recall the colors of the American Flag. This inconsistency further erodes her credibility

11

as a witness. The ALJ noted that Ms. Ramey assessed a Global Assessment of Functioning (GAF) score of between 60 and 65, which shows Plaintiff has some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functions well and maintains some meaningful interpersonal relationships (Tr. 17). See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV). Furthermore, Plaintiff admitted to leaving the house to pick up a man she met on Facebook, which resulted in her subsequent arrest, although she reported that she did not leave her home (Tr. 16, 446). The evaluation done by Ms. Ramey provides substantial evidence which undermines the opinion of Ms. Firestone.

The assessment of George T. Davis, Ph.D., the State agency psychological consultant, also supports the ALJ's decision to reject Ms. Firestone's opinion (Tr. 404-07). See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(c)(4), (f)(2), 416.912(b)(6), 416.913(c), 416.927(c)(4), (f)(2); Social Security Ruling (SSR) 96-6p, 1996 WL 374180, at *1 (S.S.A.) (1996). Dr. Davis opined that Plaintiff could understand and remember simple and detailed tasks; could concentrate and attend to the same tasks, despite some difficulty; could interact with coworkers and supervisors despite some difficulty, could do so without substantial limitation; could not relate with the general public appropriately; and could adapt to work-like settings and change with some, but not substantial, difficulty (Tr. 406). State agency consultants are considered experts in the Social Security disability programs and their opinions may be entitled to great weight if they are supported by the evidence. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p, 1996 WL 374180, at *1. Although Dr. Davis did not review all of the evidence, the ALJ did review all of the evidence, and the ALJ found Dr. Davis' opinion supported by the medical findings and consistent with the record to the extent he incorporated the doctor's findings into the RFC. See 20

C.F.R. §§ 404.1527(c), 416.927(c) (f); SSR 96-6p, 1996 WL 374180, at *1; Walters, 127 F.3d at 529-30; Cutlip, 25 F.3d at 287; Bogle, 998 F.2d at 347-48. Dr. Davis' assessment also provides substantial evidence to support the ALJ's findings, including his decision to reject Ms. Firestone's opinion. See id. Given the record as a whole, I conclude the ALJ properly rejected Ms. Firestone's opinion. If there was a technical error in saying he assigned proper weight to the opinion of Ms. Firestone rather than expressly rejecting her opinion, I conclude it was harmless. It would be futile to remand under these circumstances when it is clear the ALJ was weighing the conflicting opinions, and giving great weight to those whose opinions contradicted the opinion of Ms. Firestone.

The ALJ's Residual Functional Capacity Assessment:

Plaintiff next argues the ALJ erred because he did not adopt all of Dr. Davis' opinion in formulating his RFC (Doc. 15, Plaintiff's Memorandum at 8-10). Specifically, Plaintiff alleges that because the ALJ accorded Dr. Davis' opinion great weight, and Dr. Davis opined Plaintiff "could not relate with the general public appropriately," the ALJ erred by not including this limitation in the RFC (Tr. 15, 406). I conclude Plaintiff's argument fails because the ALJ is charged with developing an RFC based on the entire record. See 20 C.F.R. §§ 404.1546, 416.946; SSR 96-5p, 1996 WL 374183 (S.S.A.). The ALJ had the benefit of Plaintiff's testimony, hospital records, and a consultative examiner's report, that Dr. Davis did not have (Tr. 25-38, 408-421, 442-53, 476-80).

Other parts of the record support the ALJ's decision not to adopt that part of Dr. Davis' opinion that Plaintiff could not relate with the general public appropriately (Tr. 406). For example, although Plaintiff alleged she could not leave her house, she admitted to Ms. Ramey that she met a man on Facebook and picked him up (Tr. 16, 446). Ms. Ramey assessed a GAF score of between

13

60 and 65, which the ALJ noted indicates that Plaintiff generally functions well and maintains some meaningful interpersonal relationships (Tr. 17, 446). See DSM-IV at 34. Furthermore, based upon her examination of Plaintiff, Ms. Ramey found Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public unaffected (Tr. 17, 450). The ALJ recognized that Ms. Ramey had the opportunity to personally evaluate the claimant (Tr.16). "Generally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Thus, Ms. Ramey's findings support the ALJ's decision not to adopt Dr. Davis' opinion that Plaintiff could not relate with the general public appropriately.

It is clear from his decision that the ALJ considered Dr. Davis' opinion and properly accorded his opinion great weight even though he did not adopt it totally (Tr. 15, 17). Although the ALJ did not adopt Dr. Davis' limitation that Plaintiff could not relate with the general public appropriately, the ALJ's decision shows that he discounted portions of Dr. Davis' opinion after considering his opinion in context of the entire record, as he was entitled to do in assessing the RFC. See 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545, 416.913(b), 416.927, 416.945.

Plaintiff failed to meet her burden of proving that her condition caused disabling limitations. See 42 U.S.C. §§ 423(d)(5)(A), 1382a(3)(H)(I); 20 C.F.R. §§ 416.912(a), (c), 416.929(a); Foster, 279 F.3d at 353; Bogle, 998 F.2d at 347. As in many cases, there is evidence in the record to support an assessment of disability, the opinion of Ms. Firestone does. However there is conflicting evidence to the contrary. In this case, I conclude the ALJ properly considered the relevant evidence and properly performed his duty as the trier of fact of resolving any conflicts in the evidence. Substantial evidence supports the ALJ's findings and his conclusion that Plaintiff

was not disabled within the meaning of the Social Security Act.

## Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

    (1) The plaintiff's motion for judgment on the pleadings (Doc. 14) be DENIED.

    (2) The defendant's motion for summary judgment (Doc. 16) be GRANTED.

    (3) The case be DISMISSED. [1]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).